**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

CAROLYN JONES,

                           Plaintiff,

      - v -                                  Civ. No. 1:05-CV-1603
                                            (LEK/RFT)

COMMISSIONER OF SOCIAL SECURITY,

                           Defendant.

| APPEARANCES: | OF COUNSEL: |
|---|---|
| LEGAL AID SOCIETY | PETER RACETTE, ESQ. |
| Attorney for Plaintiff | |
| 100 Court Street | |
| P.O. Box 989 | |
| Plattsburg, New York 12901 | |
| | |
| HON. ANDREW T BAXTER | WILLIAM H. PEASE |
| Acting United States Attorney[1] | Assistant United States Attorney |
| Northern District of New York | |
| Attorney for Defendant | |
| P.O. Box 7198 | |
| 100 South Clinton Street | |
| Syracuse, New York 13261 | |

**RANDOLPH F. TREECE, United States Magistrate Judge**

**REPORT-RECOMMENDATION and ORDER**

      In this action, Plaintiff Carolyn Jones moves, pursuant to 42 U.S.C. § 405(g), for review of a

decision by the Commissioner of Social Security denying her application for Supplemental Security

Income (SSI).[2]  Based upon the following discussion, this Court recommends that the Commissioner's

decision denying Social Security benefits be **affirmed**.

---

     [1] Andrew T. Baxter became the Acting United States Attorney for the Northern District of New York on September 5, 2008, upon the resignation of the Honorable Glenn T. Suddaby and his appointment as a United States District Judge.

     [2] This case has proceeded in accordance with General Order 18, which sets forth the procedures to be followed when appealing a denial of Social Security benefits.  Both parties have filed Briefs, though oral argument was not heard. Dkt. Nos. 12 & 13.  The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(d).

## I. BACKGROUND

Plaintiff Carolyn Jones was born on August 5, 1944, making her sixty years old at the time the Administrative Law Judge (ALJ) rendered his decision.  Dkt. No. 9, Admin. Transcript [hereinafter "Tr."] at pp. 13, 20, & 44.  Jones completed the seventh grade, but did not progress any further in her education.  *Id*. at p. 58.  She previously worked as a retail sales clerk, caregiver, stocker, and shoe repairer.  *Id*. at p. 53.

On November 20, 2002, Jones filed for SSI alleging a disability due to anxiety and depression; she alleged a disability onset date of January 1, 2002.  *Id*. at pp. 44-45 & 52.  The application was initially denied.  *Id*. at pp. 21-24.  On June 10 and June 30, 2004, a Hearing was held before ALJ Thomas P. Zolezzi (Tr. at pp. 186-230), and on August 16, 2004, the ALJ issued an unfavorable decision against Jones (Tr. at pp. 12-20).  On November 4, 2005, the Appeals Council concluded that there was no basis under the Social Security Regulations to grant Plaintiff's request for review, thus rendering the ALJ's decision the final determination of the Commissioner.  *Id*. at pp. 3-5.  Exhausting all of her options for review through the Social Security Administration's tribunals, Plaintiff now brings this appeal.

## II. DISCUSSION

### A. Standard of Review

Under 42 U.S.C. § 405(g), the proper standard of review for this Court is not to employ a *de novo* review, but rather to discern whether substantial evidence supports the Commissioner's findings and that the correct legal standards have been applied.  *See Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991); *Urtz v. Callahan*, 965 F. Supp. 324, 325-26 (N.D.N.Y. 1997) (citing, *inter alia*, *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).  Succinctly defined, substantial evidence is "more than

a mere scintilla," it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938).

The ALJ must set forth the crucial factors supporting the decision with sufficient specificity. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). Where the ALJ's findings are supported by substantial evidence, the court may not interject its interpretation of the administrative record. *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); 42 U.S.C. § 405(g). Where the weight of the evidence, however, does not meet the requirement for substantial evidence or a reasonable basis for doubt exists as to whether correct legal principles were applied, the ALJ's decision may not be affirmed. *Johnson v. Bowen*, 817 F.2d at 986.

### B. Determination of Disability

To be considered disabled within the meaning of the Social Security Act, a plaintiff must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Furthermore, the claimant's physical or mental impairments must be of such severity as to prevent engagement in any kind of substantial gainful work which exists in the national economy. *Id*. at § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner follows a five-step analysis set forth in the Social Security Administration Regulations. 20 C.F.R. § 416.920. At Step One, the Commissioner "considers whether the claimant is currently engaged in gainful activity." *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). If the claimant is engaged in substantial gainful activity, he or she is not disabled and the inquiry ends. 20 C.F.R. § 416.920(b). If the claimant is not engaged

in substantial gainful activity, the Commissioner proceeds to Step Two and assesses whether the claimant suffers from a severe impairment that significantly limits his or her physical or mental ability to do basic work activities. *Id.* at § 416.920(c). If the claimant suffers from a severe impairment, the Commissioner considers at Step Three whether such impairment(s) meets or equals an impairment listed in Appendix 1, in Part 404, Subpart P of the Regulations. *Id.* at § 416.920(d). The Commissioner makes this assessment without considering vocational factors such as age, education, and work experience. *Berry v. Schweiker*, 675 F.2d at 467. Where the claimant has such an impairment the inquiry ceases as he or she is presumed to be disabled and unable to perform substantial gainful activity. *Id.* If the claimant's impairment(s) does not meet or equal the listed impairments, the Commissioner proceeds to Step Four and considers whether the claimant has the residual functional capacity (RFC)[3] to perform his or her past relevant work despite the existence of severe impairments. 20 C.F.R. § 416.920(e). If the claimant cannot perform his or her past work, then at Step Five, the Commissioner considers whether the claimant can perform any other work available in the national economy. *Berry v. Schweiker*, 675 F.2d at 467; 20 C.F.R. § 416.920(f).

Initially, the burden of proof lies with the claimant to show that his or her impairment(s) prevents a return to previous employment (Steps One through Four). *Berry v. Schweiker*, 675 F.2d at 467. If the claimant meets that burden, the burden then shifts to the Commissioner at Step Five to establish, with specific reference to medical evidence, that the claimant's physical and/or mental impairment(s) are not of such severity as to prevent him or her from performing work that is available within the national economy. *Id.*; 42 U.S.C. § 423(d)(2)(A); *see also White v. Sec'y of Health and*

---

[3] "Residual functional capacity" is defined by the Regulations as follows: "Your impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what you can do in a work setting. Your residual functional capacity is what you can still do despite your limitations." 20 C.F.R. § 416.945(a).

*Human Servs.*, 910 F.2d 64, 65 (2d Cir. 1990).  In making this showing at Step Five, the claimant's RFC must be considered along with other vocational factors such as age, education, past work experience, and transferability of skills.  20 C.F.R. § 416.920(f); *see also New York v. Sullivan*, 906 F.2d 910, 913 (2d Cir. 1990).

### C.  ALJ Zolezzi's Findings

Jones, as well as a vocational expert, testified at the Hearing.  Tr. at pp. 186-230.  In addition to such testimony, the ALJ had Jones's medical records consisting of treatment reports and opinions from various treating and/or examining physicians.  *Id*. at pp. 89-185.  At issue was whether Plaintiff was disabled from November 20, 2002, her SSI application date, through August 16, 2004, the date of the ALJ's decision.

Using the five-step disability evaluation, ALJ Zolezzi found that 1) Jones had not engaged in any substantial gainful activity since January 1, 2002, the alleged onset disability date; 2) she has severe medically determinable impairments, namely anxiety and depression; 3) her severe impairments did not meet nor medically equal any impairment listed in Appendix 1, Subpart P of Social Security Regulation No. 4; 4) she retains the residual functional capacity to perform less than the full range of medium work, except that she was limited by the following: a) no interaction with the public; b) occasional interaction with co-workers; c) the environment must be low stress, with no high production quotas, no report writing, no supervising, no scheduling, nor planning; d) the job must be a simple entry level with little in the way of complex decision making; e) she cannot drive for work purposes; and f) access to rest room facilities.  As such, the ALJ determined Jones could not perform her past relevant work as a retail sales person; but 5) relying upon the testimony from a vocational expert, the ALJ concluded that there is work available in the national and local economies which Plaintiff would be

capable of performing including, *inter alia*, a hand packer, laundry worker II, and furniture cleaner. *Id*. at pp. 12-20.

After reviewing the administrative transcript, the Court finds that the ALJ applied the correct legal standards and his findings are supported by substantial evidence of record.

### D.  Jones's Contentions

Plaintiff contends that the ALJ's decision denying benefits should be reversed and judgment should be granted in her favor because:  (1) at Step Three, the ALJ failed to properly assess whether her mental impairments met or equaled the Listings; (2) in assessing her RFC, the ALJ erroneously concluded she had the ability to occasionally interact with co-workers and work in a low stress job; and (3) at Step Five, the ALJ erred by finding there was work in the national and regional economy that she could perform.  *See generally* Pl.'s Br.

### 1.  Step Three – The Listings

Plaintiff asserts that the ALJ erred in finding that her anxiety and depression did not meet or medically equal Listings 12.03, 12.04, and/or 12.06.  Pl.'s Br. at pp. 17-23.  The Commissioner contends that the ALJ properly determined that Plaintiff's conditions did not meet nor medically equal any of those listed impairments.  Def.'s Br. at pp. 8-13.

As previously stated, at Step Three of the sequential disability evaluation, the ALJ must determine whether the claimant's conditions meet or medically equal the requirements for any impairment listed in Part 404 of the Social Security Regulations, Subpart P, Appendix 1.  20 C.F.R. § 416.920(a)(4)(iii).  "The Listing of Impairments describes, for each of the major body systems, impairments which are considered severe enough to prevent a person from doing any gainful activity."  20 C.F.R. § 416.925(a).  If a claimant's impairment or combination of impairments meets or equals a

listed impairment, the evaluation process is concluded and the claimant is considered disabled without considering the claimant's age, education, or work experience. 20 C.F.R. § 416.920(a)(4)(iii).

The burden is on the plaintiff to present medical findings which show that his or her impairments match a listing or are equal in severity to a listed impairment. *Zwick v. Apfel*, 1998 WL 426800, at *6 (S.D.N.Y. July 27, 1998). In order to show that an impairment matches a listing, the claimant must show that his or her impairment meets all of the specified medical criteria. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); 20 C.F.R. § 416.925(d). If a claimant's impairment "manifests only some of those criteria, no matter how severely," such impairment does not qualify. *Sullivan v. Zebley*, 493 U.S. at 530. To make this showing, the claimant must present medical findings equal in severity to all requirements which are supported by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. § 416.926(b). Any abnormal physical findings "must be shown to persist on repeated examinations despite therapy." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00(B). Furthermore, the medical reports should reflect physical limitations based upon actual observations and not just the claimant's subjective complaints. *Id.*

With regard to Listing 12.03 for schizophrenic, paranoid and other psychotic disorders, an individual can meet or equal the Listing provided that a claimant's disability meets the requirements of subsections A and B, or subsection C, which encompasses the following:

> A. Medically documented persistence, either continuous or intermittent, of one or more of the following:
>> 1. Delusions or hallucinations; or
>> 2. Catatonic or other grossly disorganized behavior; or
>> 3. Incoherence, loosening of associations, illogical thinking, or poverty of content of speech if associated with one of the following:
>>> a. Blunt affect; or
>>> b. Flat affect; or
>>> c. Inappropriate affect;
> Or

          4. Emotional withdrawal and/or isolation;

And

B. Resulting in at least two of the following:

          1. Marked restriction of activities of daily living; or

          2. Marked difficulties in maintaining social functioning; or

          3. Marked difficulties in maintaining concentration, persistence, or pace; or

          4. Repeated episodes of decompensation, each of extended duration;

Or

C. Medically documented history of a chronic schizophrenic, paranoid, or other psychotic disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

          1. Repeated episodes of decompensation, each of extended duration; or

          2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

          3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.03 (2004).

Here, the medical evidence does not establish that Plaintiff met the basic requirements of Listing 12.03. On December 28, 2000, Clinical Social Worker Carolyn E. DeGroat, of Clinton County Mental Health and Alcohol Services ("CCMHAS"), diagnosed Plaintiff with adjustment disorder with depressed mood, social phobia by history, bereavement, alcohol abuse in full remission, and possible depressive disorder, attention deficit hyperactivity disorder, post-traumatic stress disorder, and borderline personality disorder. Tr. at pp. 104-06. On January 12, 2001, Psychiatric Nurse Practitioner Catherine R. Hill, of CCMHAS, diagnosed Plaintiff with social phobia by history as well as possible borderline personality disorder. *Id*. at pp. 101-02. On January 2, 2003, Dr. John Schenkel diagnosed Plaintiff with adjustment disorder with depressed mood, social phobia, and alcohol abuse. *Id*. at p. 90. On January 31, 2003, state agency consultative examiner, Brett T. Hartman, Psy.D., diagnosed Plaintiff with major depressive disorder – moderate ***without psychotic features***, possible dysthymic disorder and panic disorder without agoraphobia, anxiety disorder, alcohol dependence in remission, and borderline

intellectual functioning.[4]  *Id*. at p. 119.  On February 27, 2003, state agency medical consultant Dr. James Ipert noted that Plaintiff suffered from adjustment disorder, borderline intellect, social phobia, schizotypal personality disorder,[5] and alcohol abuse.  *Id*. at pp. 139-41 & 143-44.  Finally, on April 2, 2003, Dr. Schenkel added the diagnosis of schizotypal personality disorder to his assessment.  *Id*. at p. 91.

Despite the evidence in the record, Plaintiff was never diagnosed with schizophrenia, paranoid, or any other psychotic disorder.  Pursuant to the Diagnostic and Statistical Manual of Mental Disorders, other psychotic disorders include schizophreniform disorder, schizoaffective disorder, delusional disorder, brief psychotic disorder, shared psychotic disorder, psychotic disorder due to a generalized medical condition, substance-induced psychotic disorder, and psychotic disorder not otherwise specified.  *See* DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 297 (American Psychiatric Association, 4th Ed. Text Revision 2000).  These were not present in any diagnosis rendered.  As such, Plaintiff would not meet the qualifications necessary to utilize this Listing and accordingly, the ALJ did not err in failing to mention this Listing.

---

[4] Additionally, on January 31, 2003, Dr. Hartman conducted an organicity evaluation wherein he tested Plaintiff's intellectual functioning and concluded that she had a borderline range of intelligence.  *See* Tr. at pp. 120-25.

[5] Schizotypal personality disorder is defined as

a pervasive pattern of social and interpersonal deficits marked by acute discomfort with, and reduced capacity for, close relationships as well as by cognitive or perceptual distortions and eccentricities of behavior, beginning by early adulthood and present in a variety of contexts, as indicated by five (or more) of the following: [(1)] ideas of reference (excluding delusions of reference); [(2)] odd beliefs or magical thinking that influences behavior and is inconsistent with subcultural norms (e.g., superstitiousness, belief in clairvoyance, telepathy, or "sixth sense"; in children and adolescents, bizarre fantasies or preoccupations); [(3)] unusual perceptual experiences, including bodily illusions; odd thinking and speech (e.g., vague, circumstantial, metaphorical, overelaborate, or stereotyped); [(4)] suspiciousness or paranoid ideation; [(5)] inappropriate or constricted affect; [(6)] behavior or appearance that is odd, eccentric, or peculiar; [(7)] lack of close friends or confidants other than first-degree relatives; [or (8)] excessive social anxiety that does not diminish with familiarity and tends to be associated with paranoid fears rather than negative judgments about self.

Personality Types, *available at* http://www.ptypes.com/schizotypalpd.html (citing *Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition* (American Psychiatric Association, 1994, pg. 645)) (last visited Aug. 5, 2008).

With regard to Listing 12.04 for affective disorders, an individual meets or equals this Listing if subsections A and B, or subsection C are met:

A. Medically documented persistence, either continuous or intermittent, of one of the following:

    1. Depressive syndrome characterized by at least four of the following:
        a. Anhedonia or pervasive loss of interest in almost all activities; or
        b. Appetite disturbance with change in weight; or
        c. Sleep disturbance; or
        d. Psychomotor agitation or retardation; or
        e. Decreased energy; or
        f. Feelings of guilt or worthlessness; or
        g. Difficulty concentrating or thinking; or
        h. Thoughts of suicide; or
        i. Hallucinations, delusions or paranoid thinking; or

    2. Manic syndrome characterized by at least three of the following:
        a. Hyperactivity; or
        b. Pressure of speech; or
        c. Flight of ideas; or
        d. Inflated self-esteem; or
        e. Decreased need for sleep; or
        f. Easy distractibility; or
        g. Involvement in activities that have a high probability of painful consequences which are not recognized; or
        h. Hallucinations, delusions or paranoid thinking;

Or

    3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes);

And

B. Resulting in at least two of the following:
    1. Marked restriction of activities of daily living; or
    2. Marked difficulties in maintaining social functioning; or
    3. Marked difficulties in maintaining concentration, persistence, or pace; or
    4. Repeated episodes of decompensation, each of extended duration;

Or

C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
    1. Repeated episodes of decompensation, each of extended duration; or
    2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would

be predicted to cause the individual to decompensate; or

3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04 (2004).

In this case, the ALJ found that in evaluating subsection B, Plaintiff had only mild restrictions of activities of daily living, moderate limitations in maintaining social functioning and concentration, persistence, or pace, and no episodes of decompensation.  Tr. at pp. 16-17.  While the evidence demonstrates that Plaintiff met the criteria under subsection A(1), which the ALJ did not discuss, subsection B was not met.  Moreover, Plaintiff failed to show that she met subsection C.

On December 28, 2000, DeGroat reported that Plaintiff's thoughts were well ordered, mood was fairly eurythmic, affect was appropriate to content, and her insight and judgment were good.  *Id*. at p. 105.  She gave Plaintiff a Global Assessment of Functioning ("GAF") score of 51, which indicates moderate symptoms or any moderate difficulty in social, occupational, or school functioning.[6]  *Id.*  On January 12, 2001, Hill opined that Plaintiff was cooperative, denied hallucinations or delusions, her speech was normal, thought processes were well organized, logical, and coherent, mood was eurythmic, affect was broad and congruent, her behavior was calm, insight was fair to good, judgment was good, and she felt anxiety when under stress.  *Id*. at pp. 100-01.  Hill gave her a GAF score of 51.  *Id*. at p. 101.  On October 19, 2001, Hill stated that Plaintiff's mood was good and her social anxiety disorder was stable.  *Id*. at p. 98.  On January 11, 2002, Hill reported that Plaintiff's mood was down, her appetite and energy were decreased, and her memory and attention were down.  *Id*. at p. 97.  On May 12, 2002, Hill found that Plaintiff's mood was okay, she was not sleeping well, and she had intrusive

---

[6] The Global Assessment of Functioning ("GAF") scale considers psychological, social, and occupational functioning on a hypothetical continuum of mental health. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 34 (American Psychiatric Association, 4th Ed. Text Revision 2000) ("DSM-IV-TR").

thinking.  *Id*. at p. 96.  On July 17, 2002, Hill noted that Plaintiff was nervous, had trouble eating, her affect was somewhat constricted, she was sleeping well, and she had panic attacks with thoughts of suicide.  *Id*. at p. 95.  On October 31, 2002, Hill stated that Plaintiff's mood was depressed, affect was blunt, she had trouble sleeping and eating, and there were no auditory hallucinations.  *Id*. at p. 93.

On January 2, 2003, Dr. Schenkel gave Plaintiff a GAF score of 51.  *Id*. at p. 90.  On January 31, 2003, Hartman reported that Plaintiff's speech was fluent, thought processes were coherent and goal directed, affect was initially anxious but comfortable as time passed, mood was dysphoric, sensorium was clear, attention and concentration were generally intact, recent and remote memory skills were mildly impaired, and her insight and judgment were fair.  *Id*. at pp. 117-18.  In his medical source statement, he opined that Plaintiff could follow and understand simple directions and instructions, perform a variety of simple and rote tasks, have a fair ability to consistently perform simple tasks that do not involve a lot of social interaction and make appropriate decisions, and fairly maintain attention and concentration.  *Id*. at p. 118.  Hartman further opined that Plaintiff had mild difficulty in learning new information, mild to moderate problems performing complex tasks independently, mild problems relating adequately with others, and a mild degree of disturbance dealing appropriately with the normal stressors of life.  *Id*. at pp. 118-19.

On February 27, 2003, Dr. Ipert completed a mental RFC assessment.  *Id*. at pp. 132-35.  Dr. Ipert examined twenty categories of mental functioning and, of those twenty, found that Plaintiff had moderate limitations in only six categories: 1) the ability to understand and remember detailed instructions; 2) the ability to carry out detailed instructions; 3) the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; 4) the ability to interact

appropriately with the general public; 5) the ability to respond appropriately to changes in the work setting; and 6) the ability to set realistic goals or make plans independently of others.  *Id*. at pp. 132-33. In thirteen other categories, Dr. Ipert found that Plaintiff was not significantly limited, and in one category, the ability to accept instructions and respond appropriately to criticism from supervisors, he stated that there was no evidence of a limitation.  *Id.*  In the Psychiatric Review Technique, Dr. Ipert concluded that Plaintiff had mild restrictions on activities of daily living and moderate difficulties in maintaining social relationships as well as maintaining concentration, persistence, or pace.  *Id*. at p. 146.  He also noted there were no episodes of decompensation.  *Id*

On January 30, 2003, Hill reported that Plaintiff's mood was good but she had obsessive thoughts of suicide, although they were improved since taking Zyprexa.  *Id*. at p. 157.  On April 24, 2003, Hill stated that Plaintiff's affect was flat, speech was normal, mood was anxious, and she had some panic attacks with suicidal ideations.[7]  *Id*. at p. 156.  On July 31, 2003, Hill found that Plaintiff's affect was blunt, speech was clear, mood was dysthymic, sleep and appetite were good, and her thinking was clear.  *Id*. at p. 155.  On October 30, 2003, Hill stated that Plaintiff's affect was blunt, speech was clear, mood was depressed, and thinking was clear, but occasionally intrusive.  *Id*. at p. 154. On December 12, 2003, Hill noted that Plaintiff's affect was blunt, speech was hoarse, mood was depressed and irritable, appetite was not good with a weight loss of twenty-one pounds, sleep was disturbed, and she was worried, paranoid, and having panic attacks.  *Id*. at p. 153.

Subsequently, on January 29, 2004, Hill reported that Plaintiff's affect was blunt, her mood was fine, she was sleeping and eating, and her thinking was clear.  *Id*. at p. 152.  On March 11, 2004, Hill

---

[7] That same day, Hill opined that due to Plaintiff's depressive disorder, social phobia, and schizotypal personality disorder, she was unable to "function in the environment of the competitive workplace[,]" and thus, she could not work now or in the future.  Tr. at p. 163.

stated that Plaintiff's affect was blunt, her mood was irritable, speech was clear, sleep and appetite were good, and she was thinking clearly. *Id*. at p. 151. On April 22, 2004, Hill opined that Plaintiff had moderate restrictions of activities of daily living, marked difficulties in maintaining social functioning and concentration, persistence, or pace, and one or two episodes of decomposition. *Id*. at pp. 166-67. She also found that Plaintiff had moderate limitations in her ability to understand, remember, and carry out instructions as well as respond appropriately to supervisors, and marked limitations in her ability to respond appropriately to co-workers, satisfy an employer's normal quality, production, and attendance records, respond to customary work pressures, and perform simple or complex tasks on a sustained basis. *Id*. at pp. 168-69.

Based on this evidence, there is medical documentation of depressive syndrome characterized by intermittent appetite disturbance with change in weight, sleep disturbance, decreased energy, difficulty concentrating or thinking, and thoughts of suicide, thus fulfilling the criteria under subsection A, part 1. However, substantial evidence shows that Plaintiff did not suffer from marked restrictions of daily living or marked limitations in maintaining social functioning, concentration, persistence, or pace.

Clinical Social Worker DeGroat and Dr. Schenkel both opined that Plaintiff had only moderate difficulties in social and occupational functioning when they gave her a GAF score of 51. *Id*. at p. 105. State agency consultant Hartman found that Plaintiff had a fair ability to consistently perform simple tasks that did not involve a lot of social interaction as well as maintain attention and concentration, and she had only mild problems relating adequately to others. *Id*. at pp. 118-19. Dr. Ipert, another state agency consultant, reported that Plaintiff was not significantly limited in three out of the five categories of social interaction, moderately limited in only one category, and that there was no evidence of

limitations in one category.  *Id*. at p. 133.  In the area of sustained concentration and persistence, Dr. Ipert stated that Plaintiff was not significantly limited in six of the eight categories and only moderately limited in the remaining two.  *Id*. at pp. 132-33.  He further concluded that she had mild restrictions on activities of daily living and only moderate difficulties in maintaining social relationships as well as maintaining concentration, persistence, or pace, with no episodes of decompensation.  *Id*. at p. 146.

Only Psychiatric Nurse Practitioner Hill opined that Plaintiff was markedly limited in the areas of social functioning and concentration, persistence, or pace.  *Id*. at pp. 166-67.  Nonetheless, under the Regulations, Hill, as a Psychiatric Nurse Practitioner, is not an "acceptable medical source" who can give a medical opinion establishing an impairment.  20 C.F.R. § 416.913(a).  In any event, similarly to DeGroat and Dr. Schenkel, Hill previously concluded that Plaintiff had only moderate difficulties in social and occupational functioning.  Tr. at p. 101.  Despite Plaintiff's claims that Hill's opinion regarding the severity of her condition should have been followed, the evidence supports the ALJ's findings.

Moreover, substantial evidence does not establish that Plaintiff met the criteria under subsection C.  Again, although Hill stated that Plaintiff suffered from one or two episodes of decompensation, Dr. Ipert reported that there were no episodes of decompensation.  *Id*. at pp. 146 & 167.  A review of the medical records shows that Plaintiff was mainly hospitalized as a teenager and that there were no repeated episodes for the period surrounding her alleged disability onset date.  *See id.* at pp. 108 & 115. The record also shows that a minimal increase in mental demands or a change in environment would not cause her to decompensate and that she did not have an inability to function outside a highly supportive living arrangement.  *See id*. at pp. 93, 95-103, & 151-57.  Accordingly, Plaintiff does meet or equal Listing 12.04.

Finally, pursuant to Listing 12.06, anxiety related disorders, an individual meets or equals this Listing if a she can prove that her disability meets the requirements of subsections A and B, or subsections A and C, which are the following:

    A. Medically documented findings of at least one of the following:
        1. Generalized persistent anxiety accompanied by three out of four of the following signs or symptoms:
            a. Motor tension; or
            b. Autonomic hyperactivity; or
            c. Apprehensive expectation; or
            d. Vigilance and scanning; or
        2. A persistent irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity, or situation; or
        3. Recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week; or
        4. Recurrent obsessions or compulsions which are a source of marked distress; or
        5. Recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress;
    And
    B. Resulting in at least two of the following:
        1. Marked restriction of activities of daily living; or
        2. Marked difficulties in maintaining social functioning; or
        3. Marked difficulties in maintaining concentration, persistence, or pace; or
        4. Repeated episodes of decompensation, each of extended duration.
    Or
    C. Resulting in complete inability to function independently outside the area of one's home.
20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.06 (2004).

Here, as under Listing 12.04, the ALJ found that in evaluating subsection B, Plaintiff had only mild restrictions of activities of daily living, moderate limitations in maintaining social functioning and concentration, persistence, or pace, and no episodes of decompensation. Tr. at pp. 16-17. Based upon a review of the evidence already discussed, Plaintiff has not demonstrated that she met the requirements of subsections A, B, or C and the ALJ did not err. The medical records do not show that she had motor

*-16-*

tension, autonomic hyperactivity, apprehensive expectation, vigilance and scanning, a persistent irrational fear of an object, activity, or situation, recurrent severe panic attacks averaging an occurrence once a week, recurrent obsessions or compulsions, or recurrent and intrusive recollections of a traumatic experience falling under subsection A. *See id*. at pp. 93, 95-103, 115-25, & 151-57. Even if Plaintiff had met the criteria of subsection A, as discussed under the analysis for Listing 12.04, Plaintiff did not suffer from marked restrictions of daily living, marked limitations in maintaining social functioning, concentration, persistence, or pace, or repeated episodes of decompensation to establish subsection B. Additionally, Plaintiff's testimony, her information sheets, and medical records show that she had an ability to function independently outside of her home. *See id*. at pp. 75-77, 93, 95-103, 115-25, 151-57, 215, & 223-24.

Therefore, based on the above discussion, we find that the ALJ did not commit error when he determined Plaintiff's severe impairments did not meet nor medically equal a listed impairment and his decision is supported by substantial evidence.

### 2. Residual Functional Capacity (RFC)

Plaintiff alleges that the ALJ's RFC was in error as he found that Plaintiff could work in a "low stress" job and occasionally interact with co-workers. Pl.'s Br. at pp. 23-24. Plaintiff further argues that the ALJ's general reference to "low stress" jobs was contrary to the requirements of Social Security Ruling 85-15. *Id.* The Commissioner contends that the ALJ properly determined Plaintiff's RFC. Def.'s Br. at pp. 13-16.

The Regulations direct the Commissioner to assess a claimant's RFC as a basis for determining the particular types of work the claimant may be able to perform despite the existence of physical and/or mental impairments. *See* 20 C.F.R. § 416.945(a). If the applicant can still perform the kind of

work he or she performed in the past, they are deemed not disabled. *Id*. at § 416.920(e).  In determining RFC, the ALJ can consider a variety of factors including a treating physician's or examining physician's observations of limitations, the plaintiff's subjective allegations of pain, physical and mental abilities, as well as the limiting effects of all impairments even those not deemed severe.  *Id*. at § 416.945(a).

Here, the medical evidence establishes that Plaintiff was able to occasionally interact with co-workers.  On January 2, 2003, state agency consultant Hartman opined that Plaintiff had only mild problems relating adequately with others. Tr. at 118-19.  On February 27, 2003, Dr. Ipert found that Plaintiff was not significantly limited in her ability to get along with co-workers or peers without distracting them or exhibiting behavioral extremes or work in coordination with or proximity to others without being distracted by them.  *Id*. at pp. 132-33.  Additionally, DeGroat and Dr. Schenkel opined that Plaintiff had only moderate difficulties in occupational functioning.  *Id*. at pp. 90 & 105.  Thus, the ALJ did not err in making his determination.

In regards to the "low stress" jobs, the ALJ did not run afoul of Social Security Ruling 85-15.  Under this Ruling, because "the mentally impaired may have difficulty meeting the requirements of even so-called "low-stress" jobs[,]" an individual's response to the demands of work should be properly reflected in the RFC assessment.  Social Security Ruling 85-15, 1985 WL 56857, at *6, *Titles II and XVI: Capability to do Other Work – The Medical-Vocational Rules as a Framework for Evaluating Solely Nonexertional Impairments* (S.S.A. 1985). Contrary to Plaintiff's assertion, the ALJ did not generally state that she should be in a low stress job.  Instead, the ALJ specified that low stress constituted a job wherein Plaintiff would not have to deal with high production quotas, report writing, supervising, scheduling, or planning.  Tr. at p. 17.  The ALJ's finding is supported by substantial

evidence in the record.

Hartman stated that Plaintiff could follow and understand simple directions and instructions, perform a variety of simple and rote tasks, have a fair ability to consistently perform simple tasks that do not involve a lot of social interaction and make appropriate decisions, and fairly maintain attention and concentration. *Id*. at p. 118. He also reported that Plaintiff had mild difficulty in learning new information, mild to moderate problems performing complex tasks independently, and a mild degree of disturbance dealing appropriately with the normal stressors of life. *Id*. at pp. 118-19. Dr. Ipert further stated that Plaintiff was not significantly limited in her ability to sustain an ordinary routine without special supervision, perform activities within a schedule, understand, remember, and carry out simple instructions, and make simple work-related decisions, and was only moderately limited in her ability to respond appropriately to changes in the work setting. *Id*. at pp. 132-33. And, as noted above, DeGroat and Dr. Schenkel opined that Plaintiff had only moderate difficulties in the area of occupational functioning. *Id*. at pp. 90 & 105. As such, the ALJ correctly assessed that Plaintiff could function in a low stress job with certain limitations.

Therefore, based upon the evidence, the ALJ properly determined Plaintiff's RFC.

### 3. Step Five – Vocational Expert (VE) Testimony

Plaintiff contends that the Commissioner failed to meet his Step Five burden insofar as the ALJ failed to use the Medical-Vocational Guidelines as a framework in rendering his decision that she was not disabled. Pl.'s Br. at pp. 24-30. The Commissioner states that ALJ properly utilized the VE's testimony. Def.'s Br. at pp. 16-21.

If at Step Four the ALJ determines the claimant cannot perform her past work, then at Step Five, the ALJ considers whether the claimant can perform any other work available in the national economy

*-19-*

based on the claimant's RFC, age, education, and prior vocational experience.  *Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d at 467; *Brown v. Comm'r of Social Security*, 2005 WL 1745655, at *3 (N.D.N.Y. June 30, 2005).  In a case where VE testimony is utilized, "[t]he ALJ is entitled to rely on vocational expert evidence in deciding whether a plaintiff retains the capacity to perform other work which exists in significant numbers in the national economy."  *Marzean v. Comm'r of Soc. Sec.*, 2008 WL 1945229, at *5 (N.D.N.Y. May 1, 2008) (citing 20 C.F.R. § 404.1566(e)).  Moreover, "[i]t is well-established that elicitation of testimony from a vocational expert is a proper means of fulfilling the agency's burden at step five of the disability test to establish the existence of jobs in sufficient numbers in the national and regional economy that plaintiff is capable of performing."  *Id.* (citing *Bapp v. Bowen*, 802 F.2d 601, 604-05 (2d Cir. 1986)) (further citations omitted).

Here, the ALJ stated that Plaintiff could not perform her past relevant work.  Tr. at pp. 17-18 & 192-93.  Upon determining that Plaintiff suffered from non-exertional impairments, the ALJ employed the testimony of a VE to determine if Plaintiff could perform any other work in the national and regional economies.  *See id*. at pp. 193-96.  Using a hypothetical incorporating the RFC stated above, the ALJ questioned the VE as to whether there were any jobs in the economy that Plaintiff could perform.  *Id.*  The VE testified that Plaintiff could perform the work of a hand packager, laundry worker, and furniture cleaner and that these jobs existed in significant numbers.  *Id*. at pp. 194-95.

Although the ALJ relied upon the VE testimony in rendering his finding that Plaintiff was not disabled, Plaintiff claims that the ALJ did not additionally use the Medical-Vocational Guidelines as a framework for finding that she was disabled.  However, as previously stated, elicitation of testimony from a VE is a proper means of fulfilling the agency's burden at step five of the disability test.  Thus,

the ALJ fulfilled his duty and was not required to supplement the VE's testimony with the Medical-Vocational Guidelines.

### III.  CONCLUSION

In light of the foregoing discussion, it is clear that in finding Jones was not disabled, the ALJ applied the correct legal standards and his factual findings were supported by substantial evidence. Thus, this Court recommends that decision be upheld.

**WHEREFORE**, it is hereby

**RECOMMENDED**, that the Commissioner's decision denying disability insurance benefits and SSI be **AFFIRMED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), & 6(e).


Date:   March 23, 2009
        Albany, New York

_____
RANDOLPH F. TREECE
United States Magistrate Judge

*-21-*